UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JESUS O. GONZALEZ FIGUEROA,

             Petitioner,

    v.

BRYAN S. WILCOX, et al.,

             Respondents.

Case No. C17-603-JLR-JPD

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner Jesus O. Gonzalez Figueroa, a native and citizen of Mexico, files this 28 U.S.C. § 2241 habeas petition to obtain release from immigration detention. Throughout the pendency of this action, he has been detained at the Etowah County Detention Center in Gadsden, Alabama. Petitioner contends that his detention is unlawful because the immigration courts committed legal and factual errors in denying him bond. He names as respondents the U.S. Immigration and Customs Enforcement ("ICE") Field Office Directors in Seattle and New Orleans, the Acting Director of ICE, the Director of the Executive Office for Immigration Review ("EOIR"), the Secretary of the Department of Homeland Security ("DHS"), and the Attorney General of the United States.

REPORT AND RECOMMENDATION - 1

1    Respondents move to dismiss for lack of personal jurisdiction and improper venue.  Dkt.
2    3.  They contend the New Orleans Field Office Director is the only proper respondent, and he is
3    not subject to this Court's jurisdiction.  *Id.* at 2.  Alternatively, they ask the Court to transfer this
4    action to the Northern District of Alabama where petitioner is detained.  *Id.*  They also argue that
5    if the Court reaches the merits, petitioner's habeas petition should be denied because his
6    detention is lawful.  *Id.* at 11-13.

7    Petitioner opposes dismissal, arguing that the Attorney General and Secretary of DHS are
8    properly named as respondents and are subject to this Court's jurisdiction.  *See* Dkt. 10-1.  He
9    contends that he prevails on the merits because the immigration courts' legal and factual errors
10   render his detention unlawful.  *Id.* at 2-3.  If the Court concludes it does not have personal
11   jurisdiction over a proper respondent, petitioner asks that this action be transferred to the
12   Northern District of Alabama.  *Id.* at 10.

13   Having considered the parties' submissions and the governing law, the Court concludes
14   that the only proper respondent is petitioner's immediate custodian, who is located in Alabama,
15   and that the interests of justice require that this matter be transferred to the U.S. District Court
16   for the Northern District of Alabama.

17                               II.    BACKGROUND

18   Petitioner first entered the United States from Mexico in February 1992, without
19   inspection.  Dkt. 1 at 9.  He moved to Tacoma, Washington, married his current wife, and bought
20   a house.  *Id.* at 7-8.  He is the father of four U.S. citizen children, ranging in age from 9 to 22.
21   *Id.* at 7.  He has been continuously employed and the sole provider for his family.  *Id.* at 8.

22   In August 2001, petitioner left the United States to visit his ailing father in Mexico.  *Id.* at
23   9.  Approximately four weeks later, he attempted to re-enter the United States while concealed in

1  the trunk of a car.  *Id.* at 10.  U.S. Customs and Border Patrol apprehended him at the border,

2  issued him an expedited order of removal, and removed him to Mexico.[1]  *Id.*  Petitioner reentered

3  the United States a few days later, without inspection, and has remained here since.  *Id.*

4        On April 29, 2015, ICE arrested petitioner, detained him at the Northwest Detention

5  Center in Tacoma, Washington, and reinstated his 2001 removal order.  *Id.* at 2, 10.  He

6  expressed a fear of return to Mexico, but an asylum officer determined his fear was not

7  reasonable.  *Id.* at 10-11.  An Immigration Judge ("IJ") affirmed the negative reasonable fear

8  finding, and petitioner filed a petition for review in the Ninth Circuit Court of Appeals, which

9  remains pending.  *Id.* at 11.  On February 28, 2017, the Ninth Circuit granted petitioner's request

10  for a stay of removal pending review.  Dkt. 1 at 11.

11        On December 1, 2015, petitioner had his first bond hearing.  *Id.* at 11.  The IJ denied

12  bond, finding that he was a flight risk.  *Id.*  Petitioner did not have the means to appeal.  *Id.*  On

13  May 23, 2016, petitioner had a second bond hearing.  *Id.*  The IJ denied bond on the same basis.

14  *Id.*  Petitioner appealed to the Board of Immigration Appeals ("BIA"), which remanded for the IJ

15  to "consider whether a bond amount could be set that is reasonably calculated to ensure [Mr.

16  Gonzalez's] presence at future hearings."  *Id.* at 12.  On November 16, 2017, petitioner had a

17  third bond hearing.  *Id.*  The IJ again denied bond because petitioner is a flight risk.  *Id.*  On

18  March 21, 2017, the BIA dismissed petitioner's appeal.  *Id.*

19        Petitioner was detained at the Northwest Detention Center from April 29, 2015, until July

20  9, 2016, when he was transferred to the Northern Oregon Correctional facility in The Dalles,

21  Oregon.  *Id.* at 2.  On March 24, 2017, petitioner was transferred to the LaSalle Detention

22  Facility in Jena, Louisiana, for approximately two days, then to the DeKalb County Detention

23

---

[1] Petitioner asserts that the expedited removal order was issued improperly, Dkt. 1 at 10, but that issue is not currently before the Court.

REPORT AND RECOMMENDATION - 3

Center in Fort Payne, Alabama, and then to the Etowah County Detention Center a couple of days later. *Id.* at 2. Petitioner initiated this action on April 17, 2017, after he had arrived at the Etowah County Detention Center. Dkt. 1.

### III.    DISCUSSION

The primary issue before the Court is who can be properly named as a respondent in a § 2241 habeas petition brought by an immigration detainee seeking release on bond or personal recognizance. As discussed below, the Court concludes that the proper respondent is petitioner's immediate custodian. Supreme Court precedent dictates that such an action must be brought in the district of confinement. Accordingly, this action should be transferred to the Northern District of Alabama.

A.    Legal Landscape

Neither the Supreme Court nor the Ninth Circuit has decided who is a proper respondent in immigration habeas cases.[2] In *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court decided the proper respondent issue in the context of a § 2241 petition filed by a United States Citizen detained as an "enemy combatant." The petitioner, who was detained in the Consolidated Naval Brig in Charleston, South Carolina, named the Secretary of Defense as the respondent to his petition. The lower courts agreed that naming the Secretary was proper, rationalizing that although the commander of the naval brig exercised control of the petitioner's day-to-day activities, the Secretary maintained the legal reality of control. *Id.* at 433.

---

[2] The only Ninth Circuit opinions addressing the issue were subsequently withdrawn. *See Armentero v. INS* ("*Armentero I*"), 340 F.3d 1058 (9th Cir. 2003) (holding, pre-*Padilla*, that the proper respondents in immigration habeas cases are the U.S. Attorney General and the Secretary of DHS), *withdrawn by* 382 F.3d 1153 (9th Cir. 2004) (specifically directing that *Armentero I* may not be cited as precedent by or to the court); *Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003) (following *Armentero I*), *withdrawn sub nom Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005).

REPORT AND RECOMMENDATION - 4

The Supreme Court disagreed. The Court began with the language of the habeas statute, which provides that the proper respondent is "the person who has custody over [the petitioner]." *Id.* at 434 (citing 28 U.S.C. § 2242); *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). Based on the "consistent use of the definite article in reference to the custodian," the Court concluded that "there is generally only one proper respondent to a given prisoner's habeas petition." *Id.*

The Court went on to reiterate its prior holding that the habeas statutes "contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Id.* at 435 (quoting *Whales v. Whitney*, 114 U.S. 564, 574 (1885) (emphasis added in *Padilla*)). This is referred to as the "immediate custodian" rule. *Id.* The Court found that "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* Consequently, the Court held that the commander of the military brig was the proper respondent, not the Secretary of Defense. *Id.* at 436. The Court, however, expressly left open the question of whether the Attorney General is a proper respondent to a habeas petition filed by a non-citizen detained pending deportation. *Id.* at 435 n.8.

Lower courts answering this question have come to a variety of conclusions. The majority have applied the immediate custodian rule and found that the warden of the facility where the non-citizen is detained is the only proper respondent. *See, e.g.*, *Kholyavskiy v. Achim*, 443 F.3d 946, 949-954 (7th Cir. 2006) (warden); *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000) (warden, unless special circumstances warrant naming the Attorney General); *Yi v.*

REPORT AND RECOMMENDATION - 5

*Maugans*, 24 F.3d 500, 507 (3d Cir. 1994) (warden); *Nken v. Napolitano*, 607 F. Supp. 2d 149, 154 (D.D.C. 2009) (same); *Bonitto v. Bureau of ICE*, 547 F. Supp. 2d 747, 751 (S.D. Tex. 2008) (same); *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1281 (S.D. Ala. 2008) (same); *Fortune v. Lynch*, No. 15 Civ. 8134(KPF), 2016 WL 1162332, at *1-*2 (S.D.N.Y. Mar. 22, 2016) (same, and noting that a majority of courts in the Second Circuit have applied the "immediate custodian" rule to non-citizens challenging their detention pending removal); *Nwabuisi v. Holder*, No. CCB-14-49, 2014 WL 992698, at *1 n.1 (D. Md. Mar. 13, 2014) (same, following approach of most district courts in the Fourth Circuit); *Alonso v. Office of Counsel/ICE*, No. 13cv02514 MJD/JJK, 2013 WL 5999485, at *2-*3 (D. Minn. Nov. 12, 2013) (same, following general approach of district courts in the Eighth Circuit); *Marroquin v. Robbins*, No. CV 12-00876-VBF (SH), 2012 WL 4815404, at *2 (C.D. Cal. Sept. 4, 2012), *adopted by* 2012 WL 4814998 (C.D. Cal. Oct. 4, 2012) (same).

Before *Padilla* was decided, the Third Circuit in *Yi* concluded that the warden was the proper respondent, explaining:

> This is because it is the warden that has day-to-day control over the prisoner and who can produce the actual body. That the district director has the power to release the detainees does not alter our conclusion. Otherwise, the Attorney General of the United States could be considered the custodian of every [non-citizen] and prisoner in custody because ultimately she controls the district directors and the prisons.

24 F.3d at 507 (citations omitted). The First Circuit came to a similar conclusion in *Vasquez*, reasoning:

> In terms of identifying a proper custodian, there is no principled distinction between [a non-citizen] held in a detention facility awaiting possible deportation and a prisoner held in a correctional facility awaiting trial or serving a sentence. Since the case law establishes that the warden of the penitentiary not the Attorney General is the person who holds a prisoner in custody for habeas purposes, it would not only be illogical but also quixotic to hold that the appropriate respondent in [a non-citizen] habeas case is someone other than the official

REPORT AND RECOMMENDATION - 6

> having day-to-day control over the facility where the [non-citizen] is being detained.

233 F.3d at 693.

Following *Padilla*, the Seventh Circuit concluded that the non-citizen's attack on the constitutionality of his confinement while he was awaiting removal fell within the "core" category of habeas challenges, and that his immediate custodian—the warden of the facility where he was detained—was the only proper respondent. *Kholyavskiy*, 443 F.3d at 952-53. The court rejected the assertion that the ICE Field Office Director was a proper respondent, reasoning that although she was responsible for authorizing custody, she did not maintain custody. *Id.* at 953 (citing *Al-Marri v. Rumsfeld*, 360 F.3d 707, 711 (7th Cir. 2004)); *see also Padilla*, 542 U.S. at 440 n.13 ("As the Seventh Circuit correctly held [in *Al-Marri*], the proper respondent is the person responsible for maintaining—not authorizing—the custody of the prisoner.").

Other courts, however, have come to different conclusions. Before *Padilla* was decided, the Sixth Circuit in *Roman* applied the immediate custodian rule but concluded that generally the INS District Director[3] was the proper respondent. 340 F.3d at 320; *see also Henderson v. INS*, 157 F.3d 106, 122-24 (2d Cir. 1998) (allowing case to proceed against INS District Director absent any objection by the government); *Santiago v. U.S. INS*, 134 F. Supp. 2d 1102, 1103 (N.D. Cal. 2001) (INS District Director is proper respondent); *Issa v. Holder*, No. 4:11-CV-19-CDL-MSH, 2011 WL 1671915, at *3 (M.D. Ga. Apr. 11, 2011), *adopted by* 2011 WL 1675277 (M.D. Ga. May 3, 2011) (same). The Sixth Circuit reasoned that the wardens of state and local facilities used by the INS followed INS detention standards, were agents of the INS District

---

[3] Prior to the creation of ICE, INS District Directors performed essentially the same functions as ICE Field Office Directors.

REPORT AND RECOMMENDATION - 7

Director, and exercised day-to-day control over detainees only at the direction of the INS. *Roman*, 340 F.3d at 320.

A number of district courts also have approved of the Attorney General and/or the Secretary of DHS as proper respondents, including one judge here in the Western District of Washington. *See, e.g.*, *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 723-25 (D. Md. 2016), *appeal docketed*, No. 16-7665 (4th Cir. Dec. 2, 2016) (Attorney General and DHS Secretary are proper respondents because they are able to grant the relief requested); *Rivera v. Holder*, 307 F.R.D. 539, 544 n.1 (W.D. Wash. 2015) (finding that *Padilla* did not apply because the "plaintiff here challenges a government policy that is based on a misapplication of the INA, seeking relief that her immediate custodian would be unable to provide"); *Sanchez-Penunuri v. Longshore*, 7 F. Supp. 3d 1136, 1147-51 (D. Colo. 2013) (at least Attorney General and Secretary of DHS are proper respondents, reflecting approach of district courts in the 10th Circuit); *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d. 488, 493-95 (S.D.N.Y. 2009) (Attorney General is proper respondent because of the control he exercises over immigration matters); *Somir v. United States*, 354 F. Supp. 2d 215 (E.D.N.Y. 2005) (same); *Cau v. Lynch*, No. CV 15-7601-FMO (DBT), 2016 WL 1358656, at *2-*3 (C.D. Cal. Feb. 16, 2016) (declining to dismiss ICE Field Office Director, Attorney General, or Secretary of DHS because petitioner could be rapidly transferred between facilities); *Carmona v. Aitken*, No. 14-cv-5321-JSC, 2015 WL 1737839, at *2-*5 (N.D. Cal. Apr. 10, 2015) (declining to follow immediate custodian rule because it fails to account for "the correlation between the substantive relief an immigrant detainee seeks and the person with the requisite authority to provide such relief"); *Bogarin-Flores v. Napolitano*, No. 12cv0399 JAH(WMc), 2012 WL 3283287, at *1-*2 (S.D. Cal. Aug. 10, 2012) (Attorney General and

REPORT AND RECOMMENDATION - 8

Secretary of DHS are proper respondents because they are "legally responsible" for the petitioner's detention).

There are two primary reasons that courts cite when declining to apply *Padilla* in the immigration habeas context. First, some courts have distinguished *Padilla* on the grounds that immigration habeas petitioners generally request bond hearings. In *Sanchez-Penunuri*, the court concluded that the petitioner's request for a bond hearing challenged "the government's interpretation of how it exercises its discretion," rather than the petitioner's present physical confinement. 7 F. Supp. 3d at 1146; *see also Castillo-Hernandez v. Longshore*, 6 F. Supp. 3d 1198, 1202-14 (D. Colo. 2013). According to the court, the petitioner challenged "*not* the manner in which the immigration authorities exercised discretion *but rather* their failure to exercise discretion in the first place." *Sanchez-Penunuri*, 7 F. Supp. 3d at 1148 (emphases in original).

The court in *Rivera* followed this approach in a class action challenge to the standard practice of IJs to deny requests for release on conditional parole. 307 F.R.D. at 543. The primary relief sought was bond hearings requiring the IJ to consider conditional parole. *Id.* The court concluded that *Padilla* and the immediate custodian rule did not apply because the plaintiff challenged "a government policy that is based on a misapplication of the INA." *Id.* at 544 n.1.

Second, a number of courts cite the immediate custodian's inability to provide the requested relief as a reason to depart from the language in *Padilla*. *See Jarpa*, 211 F. Supp. 3d at 724-25 (reasoning that the immediate custodian rule should not apply in immigration habeas actions because it would "yield the impractical result of having the immediate custodian (the Warden of a detention facility) unable to grant the relief requested"); *Rivera*, 307 F.R.D. at 544 n. 1 (reasoning, in part, that the immediate custodian rule did not apply because the immediate

REPORT AND RECOMMENDATION - 9

custodian was unable to provide the requested bond hearings); *Sanchez-Penunuri*, 7 F. Supp. 3d at 1148 (relying on "practical considerations" in concluding that the immediate custodian rule could not apply where the petitioner requested a bond hearing, specifically that the warden of an immigration detention facility could not grant the requested relief); *Reid v. Donelan*, 991 F. Supp. 2d 275, 277 n.4 (D. Mass. 2014) (declining to dismiss DHS Secretary, Attorney General, or ICE Field Office Director because they were potentially required to effectuate the remedy); *Carmona*, 2015 WL 1737839, at *3-*4 (declining to adopt immediate custodian rule because doing so would fail to account for the "correlation between the substantive relief an immigrant detainee seeks and the person with the requisite authority to provide such relief," and following *Sanchez-Penunuri*). Indeed, the court in *Jarpa* focused on the Attorney General's and Secretary of DHS's "legal authority" over the petitioner to conclude that they were proper respondents. 211 F. Supp. 3d at 724-25.

With this legal landscape in mind, the Court turns to the questions of whether the immediate custodian rule applies here, and who should be named as the proper respondent to petitioner's habeas petition.

B.     The Immediate Custodian Rule Applies Here

As the Supreme Court explained in *Padilla*, the immediate custodian rule applies to habeas petitions challenging present physical custody. 542 U.S. at 437-38. "[B]y its terms, the rule does not apply when a habeas petitioner challenges something other than his present physical confinement." *Id.* at 438. For example, a challenge to a detainer lodged against a habeas petitioner does not fall within the immediate custodian rule because it challenges future confinement. *Id.* (citing *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973)). Thus "a habeas petitioner who challenges a form of 'custody' *other* than present

physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Id.* (emphasis added).

Respondents argue that the immediate custodian rule applies here, relying primarily on *Padilla*. Petitioner responds that *Padilla* expressly declined to reach the issue of the proper respondent in an immigration habeas proceeding, and therefore it cannot control the outcome of this case. Petitioner argues that Ninth Circuit immigration habeas cases have proceeded against the Secretary of DHS and/or the Attorney General. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); *Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005). Petitioner also cites a number of cases, many of which are cited above, where the courts held that the immediate custodian rule did not apply. Petitioner focuses on *Jarpa* and *Rivera*, asserting that it would be impractical to apply the immediate custodian rule here because the relief sought—release on bond or on personal recognizance—may only be granted by federal agencies. He also attempts to analogize *Rivera* by arguing that both cases challenge legal error by the immigration courts.[4]

Although *Padilla* did not decide who is a proper respondent in an immigration habeas action, it set forth the applicable analytical framework. *Kholyavskiy*, 443 F.3d at 952 n.7. Petitioner seeks release based on alleged legal errors in the immigration courts' adjudication of his bond requests. Because the only "form" of custody petitioner challenges is his current detention, the Court concludes that this is a challenge to his present physical confinement within the meaning of *Padilla*. Therefore, the immediate custodian rule applies to this case. *See*

---

[4] Petitioner also suggests that the immediate custodian rule rewards retaliatory or bad faith transfers. At least one other court has declined to apply the immediate custodian rule on similar grounds. *See Cau v. Lynch*, No. CV 15-7601-FMO (DBT), 2016 WL 1358656, at *2-*3 (C.D. Cal. Feb. 16, 2016) (declining to dismiss ICE Field Office Director, Attorney General, or Secretary of DHS because petitioner could be rapidly transferred between facilities). But in *Padilla*, the Supreme Court explained that "when the Government moves a habeas petitioner after she properly filed a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441 (citing *Ex Parte Endo*, 323 U.S. 283 (1944)). Therefore, any future transfer would not defeat jurisdiction.

REPORT AND RECOMMENDATION - 11

*Kholyavskiy*, 443 F.3d at 952-53 (immediate custodian rule applied where petitioner alleged that his "excessive detention" violated his due process rights because this challenge was "fundamentally no different from the typical 'core' challenge described in *Padilla*, in which a prisoner seeks release from present physical confinement").

The Ninth Circuit cases petitioner cites—*Singh* and *Ali*—do not further his claims. Naming a proper respondent is a technical requirement that may be waived. *Smith v. Idaho*, 392 F.3d 350, 355-56 (9th Cir. 2004). The government did not raise the issue in *Singh*, and thus the fact that this case proceeded against the Attorney General and Secretary of DHS does not indicate Ninth Circuit endorsement of the practice. And in *Ali*, the Ninth Circuit withdrew a pre-*Padilla* opinion that had approved of the Attorney General as a proper respondent. The court remanded to the district court for further proceedings and did not readdress the proper respondent issue. *Ali* is inapposite.

In addition, the concerns noted in *Jarpa* and *Rivera* regarding the ability of the named respondent to effectuate the requested relief do not appear to be a practical obstacle. As detailed above, the majority of courts have applied the immediate custodian rule and found that the warden is only the proper respondent. These courts routinely order bond hearings and other relief when habeas petitions are granted, and there is no indication that immigration authorities fail to follow these orders. *See, e.g.*, *Hy v. Gillen*, 588 F. Supp. 2d 122, 124-25 (D. Mass. 2008) (finding that the warden is the only proper respondent and granting petitioner's request for a bond hearing). Furthermore, in *Padilla*, the Supreme Court applied the immediate custodian rule even though the brig commander did not possess the ultimate authority to decide whether or how long the petitioner would remain under his supervision. As the Supreme Court emphasized, in "core challenges," the proper respondent is "the person responsible for maintaining—not

REPORT AND RECOMMENDATION - 12

authorizing—the custody of the prisoner." 542 U.S. at 440 n.13. Whether a respondent possesses the "legal reality of control" is not relevant to present physical custody challenges. *Id.* at 439 ("identification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged 'custody'").

Finally, the Court is not persuaded by petitioner's attempt to analogize this case to *Rivera* on the basis that both cases alleged legal error in bond hearings. Unlike this case, *Rivera* involved a systemic challenge to the government's interpretation of the INA.

In sum, petitioner challenges his present physical confinement, and therefore the immediate custodian rule applies.

C.  This Action Should Be Transferred to the District of Confinement

In *Padilla*, the Supreme Court held that "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." 542 U.S. at 443; *see also id.* at 444 ("In habeas challenges to *present* physical confinement . . . the district of confinement is *synonymous* with the district court that has territorial jurisdiction over the proper respondent." (emphases in original)). Therefore, jurisdiction over petitioner's claims lies only in the Northern District of Alabama. Under 28 U.S.C. § 1406(a), the court may dismiss the case or, if it is in the interest of justice, transfer it to any district in which it properly could have been brought. Given that petitioner has been detained for over two years, the Court concludes that the interests of justice require transfer to the Northern District of Alabama.

IV.    CONCLUSION

The Court recommends that respondents' motion to dismiss, Dkt. 3, be GRANTED in part and that this action be TRANSFERRED to the U.S. District Court for the Northern District of Alabama. A proposed order accompanies this Report and Recommendation.

REPORT AND RECOMMENDATION - 13

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 11, 2017**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 15, 2017.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

Dated this 21st day of August, 2017.

*James P. Donohue*
_____
JAMES P. DONOHUE
Chief United States Magistrate Judge